**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CORNELL HESTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-001-LPS |
| | : | |
| PERRY PHELPS, et al., | : | |
| | : | |
| Defendants. | : | |

Cornell Hester, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

May 22, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

## I.     INTRODUCTION

Plaintiff Cornell Hester ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.[1] (D.I. 2)  Plaintiff is incarcerated at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware.  He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 9)  The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

## II.    BACKGROUND

The original Complaint named Defendants Warden Perry Phelps ("Phelps"), Officer Tyson ("Tyson"), Officer Cain ("Cain"), and Employee's Inside Medication Window.[2] (D.I. 2) Plaintiff later filed a Memorandum of Law that added Defendants Officer Casey ("Casey"), Officer Hedinger ("Hedinger"), Officer White ("White"), Lt. Endress ("Endress"), and Lt. Savage ("Savage").  (D.I. 13)  The Court construes the Memorandum of Law as an Amended Complaint.[3]

Plaintiff alleges that on December 23, 2011, he was wrongfully transferred from full minimum status to the Medium High Housing Unit ("MHU").  Plaintiff was one program from becoming a graduate that would have made him a role model inmate with full-minimum status.

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2]Defendant Employee's Inside Medication Window is mistakenly docketed as Employee's Inside Medical Window.  The Clerk of Court will be directed to correct the error.

[3]The Clerk of the Court will be directed to docket the Memorandum of Law at Docket Item 13 as an Amended Complaint.

Plaintiff seeks transfer to the State of New Jersey, and this status would have allowed his participation in the interstate compact process. Plaintiff did not receive any write-ups or charges and, at the time of transfer, was told that it was an administrative move.[4]  Plaintiff asked Savage how he could be transferred when there was no rule violation and asked for a copy of any rules violation, but Savage indicated that there were no charges.

MHU is a housing unit for problem inmates who have twelve to eighteen classification points or higher. Plaintiff is the only person in MHU with five points. He alleges that he was transferred because he wrote a letter to Phelps "about violating his interstate transfer." Plaintiff's December 23, 2011 grievance states that the transfer occurred after he wrote the letter to Phelps regarding the deprivation of his right to the interstate compact for transfer to New Jersey. Plaintiff's application for a transfer was denied during an "in-house" classification hearing.

Plaintiff alleges that Tyson violated his constitutional rights when he handcuffed Plaintiff and removed him to a higher security level. In addition, Tyson tried to verbally provoke Plaintiff into a reaction to the transfer.

Plaintiff alleges that inmates housed in MHU are not provided the common necessities for personal hygiene such as toilet paper, toothpaste, toothbrush, soap, washcloth, and towels. In addition, he alleges that Cain and Hedinger deprived him of his personal property that was seized upon order of Warden Phelps. Plaintiff informed Cain that he recently had two wisdom teeth removed and needed to take prescription medication on a daily basis. He told Cain and Hedinger that the pain medication was with his personal property, but was advised that his medication and

---

[4]Recently the Institutional Base Classification Committee ("IBCC") approved the decision to continue Plaintiff's housing assignment in MHU. (D.I. 11)

personal property would not be returned. He was also told that he would not receive his property until the next week. Plaintiff was ultimately without the pain medication for five days from December 23, 2011 until December 28, 2011. One evening Defendant Officer White saw Plaintiff curled up in pain. In addition, the Medication Window at B-Building, A-6 left his medication behind on three occasions and this resulted in an infection and abscesses in his mouth. Following his transfer to MHU, for a five or six day period, Plaintiff had none of his personal property, no change of underwear or prison clothing, and was not allowed his boots.

On Christmas morning, Plaintiff sought an emergency trip to the infirmary where he was seen and he received medical attention. His mouth was infected and he was given another cycle of medication. Plaintiff presented to the dentist on December 27, 2011, and again received treatment. According to Plaintiff, the dentist hid from him that two abscesses resulted from the infection. Plaintiff was given liquid medication and additional antibiotics.

Plaintiff seeks compensatory and punitive damages and reinstatement to "full minimum status." Plaintiff remains housed in MHU.

## III.   **LEGAL STANDARD**

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v.*

3

*County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his

pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to

less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94

(internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(l), a

court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal

theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-

28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67

F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took

inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to

§§ 1915(e)(2)(B)(ii) and 1915A(b)(l) is identical to the legal standard used when ruling on Rule

12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However,

before dismissing a complaint or claims for failure to state a claim upon which relief may be

granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must

grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile.

*See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). When

determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal

4

elements of a claim are separated. *See id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *See id.* at 210-11. The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 211. In other words, the complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## IV.    DISCUSSION

### A.    Housing Assignment/Classification

Plaintiff claims the administrative transfer from minimum to medium security classification violated his constitutional rights. It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (Constitution does not give rise to liberty interest in avoiding transfer to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). The custody placement or classification of

5

prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). *See also Sandin v. Conner*, 515 U.S. 472, 480 (1995). Therefore, Plaintiff can prevail under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention. Here, however, neither Delaware law nor Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. *See* 11 Del. C. § 6529(e).

In addition, state created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (internal quotation marks omitted). In deciding whether a protected liberty interest exists, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *See Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit has held that a state prisoner's confinement in administrative segregation for fifteen months did not impose an atypical and significant hardship on the prisoner. *See Griffin v. Vaughn*, 112 F.3d 703, 706-09 (3d Cir. 1997); *see also Mearin v. Vidonish*, 450 F. App'x 100 (3d Cir. Nov. 3, 2011)

6

(not published) (affirming that placement in administrative custody for periods of 256 days and 343 days did not trigger a constitutionally protected liberty interest); *Scerbo v. Lowe*, 326 F. App'x 652, 656 (3d Cir. May 1, 2009) (eighteen-month period of confinement in maximum security custody did not implicate protected liberty interest); *Young v. Beard*, 227 F. App'x 138 (3d Cir. Mar. 20, 2007) (not published) (inmate sentenced to aggregate of 930 days in disciplinary confinement without dayroom or telephone privileges did not constitute atypical and significant hardship sufficient to trigger liberty interest); *Brown v. Cunningham,* 730 F.Supp. 612 (D. Del. 1990) (plaintiff's transfer from general population to administrative segregation, without being given notice and opportunity to challenge it, was not violation of plaintiff's liberty interest).

As Plaintiff notes, a transfer to MHU results in greater restrictions than a housing assignment in minimum security. Regardless, the transfer from one classification to another did not violate his due process rights. Accordingly, the decision to place Plaintiff in MHU cannot be viewed as falling outside the scope of "the sentence imposed upon him [or] otherwise violative of the Constitution." Plaintiff cannot state a claim for violation of a liberty interest created by the Due Process Clause or State law with respect to his custody level classification. His due process claim has no arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**B.**   **Transfer**

Plaintiff appears to allege a violation of his constitutional rights because he was not transferred to New Jersey pursuant to an interstate compact agreement. The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they

7

choose. *See Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution, whether it be inside the state of conviction, or outside that state. *See Olim v. Wakinekona,* 461 U.S. 238, 251(1983). Plaintiff's claim fails as a matter of law. He has no constitutional right to a transfer to the State of New Jersey.

This claim has no arguable basis in law or in fact and, therefore, will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

### C.   Conditions of Confinement

Plaintiff alleges that he was subjected to unlawful conditions of confinement when he was deprived of his personal property for a five or six day period and because housing in MHU does not provide for the common necessities for personal hygiene.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

8

Although the conditions in MHU may be harsher than those in minimum security, they do not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g.*, *Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner was placed in strip cell without clothes, water in the cell was turned off and mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). In addition, while Plaintiff claims he was denied certain amenities, he has named no specific individual, nor has he alleged that prison officials knew of, and disregarded, an excessive risk to his health or safety. *See Beers-Capitol*, 256 F.3d at 125. Plaintiff may find his conditions of confinement uncomfortable, but they are no different than those afforded to other inmates who are housed in MHU.

The allegations do not rise to the level of a constitutional violation. Therefore, the Court will dismiss the claims as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) (B) and 1915A(b)(1).

### D.    Personal Property

Plaintiff alleges that Cain and Hedinger violated his constitutional rights when they confiscated his personal property upon his transfer to MHU.

A prisoner's due process claim based on random and unauthorized deprivation of property by a state actor is not actionable under § 1983, whether the deprivation is negligent or intentional, unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,* 451 U.S. 527, 542 (1981), *overruled on other grounds by*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff has available to him the option of filing a common law claim for conversion of property. Inasmuch as Delaware law provides an adequate

9

remedy for Plaintiff, he cannot maintain a cause of action pursuant to § 1983. *See Hudson,* 468 U.S. at 535; *Nicholson v. Carroll,* 390 F. Supp. 2d 429, 435 (D. Del. 2005).

The claim lacks an arguable basis in law or in fact and, therefore, will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) (B) and 1915A(b)(1).

### E.     Verbal Harassment

Plaintiff alleges that Tyson verbally abused him in an attempt to cause him to react to his transfer to MHU.  Verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983. *See Aleem-X v. Westcott,* 347 F. App'x 731 (3d Cir. Oct. 9, 2009) (not published); *Murray v. Woodburn,* 809 F.Supp. 383, 384 (E.D. Pa. 1993); *Prisoners' Legal Ass'n v. Roberson,* 822 F.Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights); *see also McBride v. Deer,* 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats do not constitute Eighth Amendment violation).

Plaintiff's claim of verbal abuse is not cognizable under § 1983.  Therefore, the Court will dismiss the claim as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)

### F.     Excessive Force

Plaintiff alleges excessive force occurred when he was handcuffed by Tyson upon his transfer to MHU.  The core judicial inquiry when a prisoner alleges that prison officers used excessive force is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or instead was applied maliciously and sadistically to cause harm. *See Wilkins v. Gaddy,* __U.S.__, 130 S.Ct. 1175 (2010).  For an inmate to prevail on an excessive force claim he must prove two things: (1) that he is incarcerated under conditions posing a substantial risk of harm, and (2) that the official

10

knew of and disregarded an excessive risk to the inmate's health and safety. *See Farmer*, 511 U.S. at 834-38. As to the second requirement, which goes to the state of mind of the official, the inmate must demonstrate "deliberate indifference" on the part of the official. *Id.* at 834. A prison official is not liable merely because he exhibits an "ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the plaintiff must demonstrate that the prison official acted or failed to act in spite of his or her knowledge of a substantial risk of serious harm to the plaintiff. *See Farmer*, 511 U.S. at 842.

Plaintiff's allegations are not sufficient to state a claim. He does not characterize the handcuffs as tight, refer to pain or even discomfort, or indicate any type of injury occurred when he was handcuffed. Instead, he states that he was embarrassed. Even construing the facts in the light most favorable to Plaintiff, as the Court must, it cannot be said that Tyson violated Plaintiff's constitutional rights.

The allegations do not rise to the level of a constitutional violation. Therefore, the Court will dismiss as frivolous the excessive force claim pursuant to 28 U.S.C. §§ 1915(e)(2) (B) and 1915A(b)(1).

###   G.      Retaliation

Plaintiff alleges that Warden Phelps retaliated against him after he sent Warden Phelps a letter that criticized and complained that his constitutional rights were violated by the failure to transfer him to New Jersey pursuant to an interstate compact.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). In screening this claim, the Court assumes, without deciding, that the

11

letter is a form of protected speech. It has long been established that the First Amendment bars

retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse*

*v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).

Proof of a retaliation claim requires Plaintiff demonstrate that: (1) he engaged in

protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected

activity was a substantial motivating factor in the state actor's decision to take adverse action.

*See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000)

(stating factfinder could conclude that retaliatory placement in administrative confinement would

"deter a person of ordinary firmness from exercising his First Amendment rights"). The

causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal

proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of

antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v.*

*DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494,

503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right

was a substantial or motivating factor in the challenged decision, the prison officials may still

prevail by proving that they would have made the same decision absent the protected conduct for

reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330,

334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison

administrators and staff is difficult, and that the decisions of prison officials require deference,

particularly where prison security is concerned. *See Rauser*, 241 F.3d at 334.

As discussed above, the Court assumes, without deciding, that the letter is a form of protected speech. Hence, Plaintiff has met the first element of a retaliation claim. The allegations in the Complaint also successfully satisfy the second and third prongs of the prima facie test. Plaintiff's transfer to MHU may qualify as adverse treatment for the purposes of a retaliation claim. *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (prisoner's transfer to administrative segregation qualified as adverse action). Additionally, Plaintiff has alleged causation through the suggestive timing of the punishment he received subsequent to the letter he wrote to the warden. Therefore, Plaintiff will be allowed to proceed with this claim.

### H.     Medical Needs

The Complaint also contains several medical needs claims. Plaintiff alleges that, for a five to six day period, Cain and Hedinger refused him access to pain medication necessary because of recent dental work. He alleges that the Medication Window left his medication behind three times and this resulted in an infection and abscesses. Finally, while not clear, it appears that he alleges the medical department did not provide adequate care.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim, an inmate must allege: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer*, 511 U.S. at 837; *Giles v. Kearney*,

571 F.3d 318, 330 (3d Cir. 2009).  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *See Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 12, 2010) (not published) (internal quotation marks omitted).  An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care but believes that more should be done by way of diagnosis and treatment, including options available to medical personnel that were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107.  Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as Constitutional deprivation).  Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Even when reading the Complaint in the most favorable light to Plaintiff, he fails to state an actionable constitutional claim against the Medication Window, a non-person, and medical personnel for deliberate indifference to a serious medical need.  It appears, however, the Plaintiff has stated a cognizable claim against Cain and Hedinger for denying him necessary pain medication due to recent dental work

Therefore, the Court will dismiss the claims against the Medication Window and medical personnel as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  Plaintiff will be allowed to proceed against Cain and Hedinger on this claim.

14

## V.     REQUEST FOR SUBPOENA

Plaintiff's request for subpoena will be denied as premature.  (D.I. 8)  It is unclear why Plaintiff wishes to subpoena Cain, Hedinger, Casey, and Tyson.  Plaintiff also lists witnesses, but again, it is unclear if he wishes to subpoena the witnesses.  Regardless, discovery for parties and non-parties shall be conducted in accordance with the Federal Rules of Civil Procedure.

## VI.    REQUEST FOR COUNSEL

Plaintiff requests counsel on the grounds that: (1) counsel can perform a valuable function; (2) issues can be more clearly identified with counsel; (3) counsel may help to expedite an evidentiary hearing or make it unnecessary; (4) counsel will make better use of prehearing discovery procedures; (5) Plaintiff does not have the ability to present his case; (6) Plaintiff is unskilled in the law and the factual and legal issues are complex; (7) Plaintiff cannot obtain and afford counsel on his own behalf; and (8) counsel would serve the best interests of justice in this case.  (D.I. 10)

Although a plaintiff does not have a constitutional or statutory right to an attorney,[5] a district court may seek legal representation for a plaintiff who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."  *Tabron*, 6 F.3d at 154.

---

[5]*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (stating § 1915(d) – now § 1915(e)(1) – does not authorize federal court to require unwilling attorney to represent indigent civil litigant); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993) (stating there is no right to counsel in civil suit).

15

Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

After reviewing Plaintiff's Request, the Court concludes that the case is not so factually or legally complex that requesting an attorney is warranted. In addition, the filings in this case demonstrate Plaintiff's ability to articulate his claims and represent himself. Thus, in these circumstances, the Court will deny the Request for Counsel without prejudice to renew. (D.I. 10)

## VII.  CONCLUSION

For the above reasons, the Court finds that Plaintiff has stated what appear to be cognizable claims against Phelps, Cain, and Hedinger. The Court will dismiss the remaining claims and Defendants as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The Court will deny as premature Plaintiff's Request for Subpoena (D.I. 8) and deny without prejudice Plaintiff's Request for Counsel (D.I. 10).

An appropriate Order follows.