## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORNELL HESTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-001-LPS |
| | : | |
| PERRY PHELPS, et al., | : | |
| | : | |
| Defendants. | : | |

Cornell Hester, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants Warden Perry Phelps and Sergeant Cain.

## **MEMORANDUM OPINION**

July 29, 2013
Wilmington, Delaware

STARK, U.S. District Judge:

## I.   INTRODUCTION

Plaintiff Cornell Hester ("Plaintiff"), an inmate at the James T. Vaughn Correctional

Center ("VCC") in Smyrna, Delaware, filed this action on January 3, 2012, alleging

constitutional violations pursuant to 42 U.S.C. § 1983.  Presently before the Court are

Defendants Warden Perry Phelps' ("Warden Phelps") and Sergeant Cain's ("Cain") (together

"State Defendants") motion for summary judgment (D.I. 44) and motion to revoke Plaintiff's *in*

*forma pauperis* status (D.I. 52), as well as Plaintiff's motion for leave to file a response (D.I. 50),

motions for injunctive relief (D.I. 54, 55), motion for hearing (D.I. 56), and motion for leave to

amend (D.I. 63).  For the reasons that follow, the Court will grant Plaintiff's motion for leave to

file a response and will deny all remaining motions.

## II.   BACKGROUND

In his Complaint (D.I. 2, 13), Plaintiff alleges that on December 23, 2011, he was

wrongfully transferred from full minimum status to the Medium High Housing Unit ("MHU").

MHU is a housing unit for problem inmates who have twelve to eighteen classification points or

higher.  Plaintiff is the only person in MHU with five points.  Plaintiff was one program away

from becoming a graduate, which would have made him a role model inmate with full-minimum

status.  Plaintiff seeks transfer to the State of New Jersey, and this status would have allowed his

participation in the interstate compact process.  Plaintiff did not receive any write-ups or charges

and, at the time of transfer, was told that it was an administrative move.  Plaintiff asked Lt.

Savage ("Savage") how he could be transferred when there was no rule violation and asked for a

copy of any rules violation, but Savage indicated that there were no charges.

1

Plaintiff alleges that he was transferred because he wrote a letter to Warden Phelps "about violating his interstate transfer." Plaintiff's December 23, 2011 grievance states that the transfer occurred after he wrote the letter to Warden Phelps regarding the deprivation of his right to the interstate compact for transfer to New Jersey. (*See* D.I. 7) Plaintiff's application for a transfer was denied during an "in-house" classification hearing. Because State Defendants move for summary judgment on behalf of only Warden Phelps, the Court does not address Plaintiff's remaining allegations.

Incident reports dated August 5 and 27, September 27, October 15, November 9, and December 10 and 15, 2011, were issued to Plaintiff for violations of prison rules. (D.I. 45 Ex. A) Plaintiff indicates that he was found "not guilty" of the August 5, September 27, and October 15, 2011 infractions. (D.I. 51 Ex. A) On December 22, 2011, Plaintiff wrote a letter to Warden Phelps requesting an interstate compact transfer to New Jersey. (D.I. 45 Ex. A) The letter was forwarded to treatment administrator Hosterman. (*Id.*) The next day, Deputy Warden Pierce authored a memo to have Plaintiff moved to MHU pending a classification review based upon a recent investigation that Plaintiff had been a serious management problem and required more control than could be provided in minimum security.[1] (*Id.*) Warden Phelps was not copied on the letter. That same day, an administrative transfer memo, signed by the Shift Commander, was provided to Plaintiff. (*Id.*) Again, Warden Phelps was not copied on the memo.

According to Plaintiff, Savage, Lt. Endress, and Counselors Davis and Shrader verbally confirmed that Warden Phelps ordered Plaintiff's transfer to MHU. (D.I. 51 ¶ C. 3) In addition,

---

[1] State Defendants' Reply refers to an affidavit from Pierce. (*See* D.I. 53) The affidavit was not filed with the Court.

and according to Plaintiff, Cain advised Plaintiff that the administrative transfer was ordered by Warden Phelps. (*Id.* at ¶ D.1)

Plaintiff wrote a second letter to Warden Phelps on January 3, 2012, again requesting an interstate compact transfer to New Jersey. (*Id.*) Once again, the letter was forwarded to treatment administrator Hosterman. (*Id.*) A counselor met with Plaintiff on January 18, 2012. (D.I. 45 Ex. A) Plaintiff questioned his transfer, stating that he believed he was set up and wrongfully transferred. (*Id.*) The counselor informed Plaintiff that he was administratively transferred because he was a management problem and that Plaintiff would have to transition back to his prior housing unit. (*Id.*)

## III.   **MOTION FOR SUMMARY JUDGMENT**

State Defendants move for summary judgment on behalf of Warden Phelps on the grounds that Warden Phelps was not personally involved in the decision to transfer Plaintiff, and he is entitled to qualified immunity. (D.I. 44, 45) While Plaintiff did not timely file an opposition, he filed a motion for leave to file his opposition. (D.I. 50) The Court will grant the motion and considers Plaintiff's opposition. (D.I. 51) Plaintiff also moves for an evidentiary hearing to support his opposition to the Motion for Summary Judgment. (D.I. 56) This motion will be denied.

### A.   **Standards of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

3

586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed

must be supported either by citing to "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for the purposes of the motion only), admissions, interrogatory answers, or

other materials," or by "showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the

nonmovant must then "come forward with specific facts showing that there is a genuine issue for

trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150 (2000).

### B.    Personal Involvement

Warden Phelps contends that the evidence of record does not support a finding of his

personal involvement in Plaintiff's transfer. In addition, he argues that Plaintiff's transfer was

not motivated in response to Plaintiff's request for an interstate compact transfer but, rather, as a

result of Plaintiff's numerous disciplinary issues. Plaintiff contends that Warden Phelps was

personally involved in the transfer, that numerous prison officials indicated to him that it was

Warden Phelps who authorized the transfer, and that the transfer occurred just one day following

his letter to the warden.

A defendant in a civil rights action must have personal involvement in the alleged

wrongs; liability cannot be predicated solely on the operation of respondeat superior. *See Rode v.*

4

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  In order to satisfy the "personal involvement" requirement, a § 1983 complaint need only allege the conduct, time, place, and person responsible.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.

In order to establish a retaliation claim, a prisoner must show that he engaged in a constitutionally protected activity, that he suffered an adverse action at the hands of prison officials, and that there was a causal link between the two.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997).  "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned.  *See Rauser*, 241 F.3d at 334.

Construing the facts in the light most favorable to Plaintiff, the non-moving party, the Court concludes that there remain genuine issues of fact with regard to Warden Phelps' involvement in Plaintiff's transfer.  State Defendants argue that Plaintiff did not obtain witness

5

statements to support his position that Warden Phelps ordered the transfer. However, the record

is also devoid of statements that indicate Warden Phelps had no input in the decision to transfer

Plaintiff, did not order the transfer, or did not acquiesce in the decision to transfer Plaintiff. The

record reflects that Warden Phelps possessed knowledge of Plaintiff's request for an interstate

compact transfer via the December 22, 2010 letter, in which Plaintiff complained to him that he

was violating the interstate compact.[2]   Plaintiff argues that Warden Phelps approved the transfer

in retaliation for Plaintiff's letter of complaint. "From the facts alleged [the Court] can weigh the

substantiality of the claim. No more is required." *Solan v. Ranck*, 326 F. App'x 97, 101 (3d Cir.

May 8, 2009) (quoting *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980)).

Plaintiff has met the first element of a retaliation claim. In addition, his transfer may

qualify as adverse treatment for the purposes of a retaliation claim. *See Atkinson v. Taylor*, 316

F.3d 257, 270 (3d Cir. 2003) (finding prisoner's transfer to administrative segregation qualified

as adverse action). Plaintiff has alleged causation through the suggestive timing of the transfer

that occurred the day following his letter to Warden Phelps. Warden Phelps, however, explains

Plaintiff was transferred because of his lengthy of disciplinary violations and, thus, has provided

a reason that is reasonably related to a legitimate penological interest. Plaintiff counters that he

was found "not guilty" in at least three of the disciplinary violations that State Defendants rely

upon. In sum, there remain genuine issues of material fact and, therefore, summary judgment is

not appropriate on the current record.

For the above reasons, the Court will deny the motion for summary judgment (D.I. 44)

filed on behalf of Warden Phelps.

---

[2]The Court assumes, without deciding, that the letter is a form of protected speech.

C.   **Qualified Immunity**

State Defendants also assert that summary judgment is appropriate because Warden Phelps is entitled to qualified immunity. Specifically, State Defendants argue that Plaintiff has failed to establish that Warden Phelps acted with discriminatory purpose, relying upon *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the Supreme Court made clear in *Iqbal*, the factors necessary to establish a constitutional violation will vary with the constitutional provisions at issue. *See id.* at 676. The claims at issue in *Iqbal* involved discrimination in contravention of the First and Fifth Amendments to the Constitution. *See id.* at 669. In order to make out a claim of discrimination under the First and Fifth Amendments, a plaintiff must plead and prove that the defendants acted with "discriminatory purpose." *See id.*

Here, Plaintiff alleges retaliation for complaining about alleged unlawful acts in not transferring him pursuant to the interstate compact. As discussed above, the elements of retaliation are different from discrimination. In addition, the holding in *Iqbal* is limited to situations involving discrimination. *See Iqbal*, 556 U.S. at 677 ("In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability . . . for unconstitutional discrimination. . . ."). Accordingly, and as discussed above, the Court applied the knowledge and acquiescence standard in determining the issue of Warden Phelps' personal involvement.

When analyzing qualified immunity, the two-step test as set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is not mandatory, but often appropriate. *See Pearson v. Callahan*, 555 U.S. 233, 236 (2009). Pursuant to *Saucier*, the court first examines whether the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. *See Saucier*, 533

7

U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the court proceeds to the second inquiry and determine if the right was "clearly established in the specific context of the case." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Saucier*, 533 U.S. at 202 (noting that officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Courts have the discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236.

As discussed above, there remain genuine issues of disputed material fact as to Warden Phelps' personal involvement in retaliating against Plaintiff and, thus, whether he violated Plaintiff's constitutional rights. Accordingly, at this time, the Court will deny the Motion for Summary Judgment on the issue of qualified immunity.

## IV.    **MOTION TO REVOKE *IN FORMA PAUPERIS* STATUS**

State Defendants move to revoke Plaintiff's *in forma pauperis* status. (D.I. 52) The Prison Litigation Reform Act ("PLRA") provides that a prisoner cannot bring a new civil action or appeal a judgment in a civil action *in forma pauperis* if he has, three or more times in the past, while incarcerated, brought a civil action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). State Defendants contend that the instant case is a frivolous lawsuit, that Plaintiff has acquired three or more strikes, and, therefore, Plaintiff falls within the "three strikes

rule." An exception is made to the "three strikes rule" when the prisoner is in imminent danger of serious physical injury.

Plaintiff's Complaint alleges denial of dental care. The Court reviewed the Complaint when it granted Plaintiff leave to proceed *in forma pauperis*. It determined that Plaintiff adequately alleged that, at time of the filing of the Complaint, he was under imminent danger of serious physical injury. *(See* D.I. 6; *see also Williams v. Forte*, 135 F. App'x 520 (3d Cir. 2005) (inmate adequately alleged that he was in imminent danger of serious physical injury to qualify for three-strikes exception under the PLRA *in forma pauperis* statute, where his complaint against prison officials alleged a lack of medical treatment over time for medical condition that placed him in serious pain at the time he filed his complaint); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 311 (3d Cir. 2001).

The Court has considered the issue and finds no basis to change its ruling. Therefore, the Court will deny State Defendants' Motion to Revoke Plaintiff's *In Forma Pauperis Status*. (D.I. 52)

## V.    **MOTIONS FOR INJUNCTIVE RELIEF**

On September 7, 2012, this Court denied Plaintiff's Motion for Injunctive Relief, wherein he sought transfer to a correctional institution in New Jersey. *(See* D.I. 38) Since that time, Plaintiff has filed two additional motions, both seeking a transfer to a New Jersey correctional institution due to alleged excessive retaliation and harassment. *(See* D.I. 54, 55)

"A preliminary injunction is an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and

9

(4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176

F.3d 151, 153 (3d Cir. 1999). Because of the intractable problems of prison administration, a

request for injunctive relief in the prison context must be viewed with considerable caution. *See*

*Abraham v. Danberg*, 322 F. App'x 169, 170 (3d Cir. Apr. 24, 2009) (citing *Goff v. Harper*, 60

F.3d 518, 520 (8th Cir. 1995)).

Plaintiff has no right to transfer to a New Jersey correctional facility. The Delaware

Supreme Court has recognized that prison officials have discretion to house inmates at the

facilities they choose. *See Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table)

(citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Furthermore, the United States

Supreme Court has held that an inmate has no due process right to be incarcerated in a particular

institution, whether it be inside or outside the state of conviction. *See Olim v. Wakinekona,* 461

U.S. 238, 251(1983). In addition, on the record before the Court, the Court cannot conclude that

Plaintiff has established a likelihood of success on the merits. Finally, this Court has previously

considered the issue and determined that injunctive relief is not warranted.

Therefore, the Court will deny Plaintiff's Motions for Injunctive Relief. (D.I. 54, 55)

Plaintiff is placed on notice that future motions seeking a transfer to a New Jersey correctional

institution will be docketed, but not considered.

## VI.    MOTION TO AMEND

Plaintiff recently a motion for leave to amend. (D.I. 63) "After amending once or after

an answer has been filed, the plaintiff may amend only with leave of the court or the written

consent of the opposing party, but 'leave shall be freely given when justice so requires.'" *Shane*

*v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15(a)). If a proposed

10

amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). Plaintiff proposes to amend to add a second retaliation claim against Phelps.

To state a claim for retaliation, a plaintiff must allege that: (1) he was engaged in constitutionally protected conduct, (2) "he suffered some 'adverse action' at the hands of the prison officials," and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. *Rauser*, 241 F.3d at 333. Plaintiff's proposed amendment alleges, in a conclusory manner, that in May 2013 he was "thrown from minimum to maximum all over again same retaliation process as to the pending civil complaint filed 5-22-2012." The proposed amendment advances a claim that is legally insufficient on its face. Therefore, the Court will deny the motion for leave to amend. (D.I. 63)

## VII.   CONCLUSION

For the above reasons, the Court will grant the motion for leave to file a response (D.I. 50) and deny the remaining motions (D.I. 44, 52, 54, 55, 56, 63).

An appropriate Order follows.

11