IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| CORNELL HESTER, | : |  |
|---|---|---|
| Plaintiff, | : | |
| v. | : | Civ. No. 12-001-LPS |
| PERRY PHELPS, et al., | : | |
| Defendants. | : | |

Cornell Hester, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Stuart B. Drowos, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

September 29, 2014
Wilmington, Delaware


STARK, U.S. District Judge:

I. **INTRODUCTION**

Plaintiff Cornell Hester ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this action on January 3, 2012, alleging constitutional violations pursuant to 42 U.S.C. § 1983. Presently before the Court are Plaintiff's motion to produce key evidence and witnesses for trial (D.I. 111), motion for summary judgment (D.I. 112), motions for immediate prison transfer (D.I. 123, 133), and motion for leave to file an amended complaint (D.I. 134), as well as cross-motion for summary judgment (D.I. 126) filed by Defendants Perry Phelps ("Phelps"), Sgt. Cain ("Cain"), and Officer Hedinger ("Hedinger") (together "State Defendants"). For the reasons that follow, the Court will deny Plaintiff's motions and will grant Defendants' motion for summary judgment.

II. **BACKGROUND**

On December 22, 2011, Plaintiff wrote a letter to then Warden Phelps[1] requesting an interstate compact transfer to New Jersey. (D.I. 45 Ex. A Contact Notes at 2) The letter was forwarded to Treatment Administrator Hosterman. (*Id.*) Plaintiff alleges that on December 23, 2011, he was wrongfully transferred from full minimum status to the Medium High Housing Unit ("MHU") in retaliation for the December 22 letter. (*See* D.I. 2, 13) Plaintiff further alleges that, upon his transfer, he was denied necessary medication until he received treatment in the infirmary on Christmas Day[2] and again on December 27, 2011. (*See* D.I. 2 at ¶¶ 11-14; D.I. 13)

---

[1] Phelps is currently Bureau Chief for the Delaware Bureau of Prisons.

[2] There is a discrepancy in the time-frame. The Complaint alleges that Plaintiff suffered for five days without proper medication, but also alleges that Plaintiff was seen by medical staff on Christmas morning, which took two days after Plaintiff's transfer to MHU.

1

Over the course of 2011, Plaintiff was cited for violating prison rules on February 27, March 10 and 28, April 13, August 5 and 27, September 27, October 15, November 9, and December 10 and 15. (D.I. 118 Ex. A; D.I. 127 Ex. 1) Most of the violations were minor, but two were considered major. (D.I. 127 Ex. 1 at ¶ 7) In December 2011, during a routine inspection of W Building, then VCC Deputy Warden David Pierce ("Pierce")[3] was informed that Plaintiff had become a behavioral problem who had received multiple disciplinary write-ups over several months prior to the inspection. (D.I. 127 Ex. 1 at ¶ 6) Following his inspection, conversations with housing staff, and a review of Plaintiff's disciplinary history, Pierce personally ordered Plaintiff's transfer to MHU, Building B, pending a classification review, as Pierce's investigation indicated to him that Plaintiff was a continual and serous management problem and, hence, transfer of Plaintiff to a higher security level (where he could be better controlled) was warranted. (*Id.* at ¶¶ 8, 9) On December 23, 2011, Pierce authored a memo to Akinbayo Kolawole ("Kolawole") to move Plaintiff to MHU, B Building, pending a classification review. (*See* D.I. 45 Ex. Pierce Dec. 23, 2011 memo) The decision to administratively transfer Plaintiff was made solely by Pierce; Phelps did not make the decision nor instruct Piece to do so. (D.I. 127 Ex. 1 at ¶ 8) Phelps denies that he ordered Plaintiff's transfer to MHU. (D.I. 121 at Answer to Req. for Admis. No. 1) The decision was permitted by, and consistent with, Delaware Department of Correction ("DOC") policies and procedures and the discretion afforded to Pierce in his position as Deputy Warden. (D.I. 127 Ex. 1 at ¶ 8) That same day, an administrative transfer memo, signed by Shift Commander Kowalole, was provided to Plaintiff, advising him that he was temporarily, administratively, transferred to higher security per "D/W Pierce." (D.I. 45 Ex. Kolawole Dec. 23, 2011 memo)

---

[3]Pierce is now Warden at the VCC.

Plaintiff wrote a second letter to Warden Phelps on January 3, 2012, again requesting an interstate compact transfer to New Jersey. (*Id.* at Ex. A Contact Notes at 2) Once again, the letter was forwarded to Treatment Administrator Hosterman. (*Id.*) On January 18, 2012, a counselor met with Plaintiff, and during the meeting Plaintiff questioned his transfer and alleged that he was set up and wrongfully transferred. (*Id.* at 1-2) The counselor informed Plaintiff that he had been administratively transferred because he was a management problem and that Plaintiff would have to transition back to his prior housing unit. (*Id.*)

Upon his transfer to B Building, Plaintiff's personal property was inventoried by staff. (D.I. 127 Ex. 2 at ¶ 7; Ex. 3 at ¶ 7) Cain and Hedinger state that, to the best of their beliefs, Plaintiff's personal property was provided to him while he was housed in B Building. (*Id.* at Ex. 2 at ¶ 8; Ex. 3 at ¶ 8) Cain does not recall Plaintiff requesting that he be allowed to retain medication, or Plaintiff indicating that it was necessary for him to retain the medication due to a dental procedure. (*Id.* at Ex. 2 at ¶ 9) Hedinger recalled that Plaintiff requested permission to retain medication prescribed him following a dental procedure but does not recall Plaintiff indicating that the medication was necessary. (*Id.* at Ex. 3 at ¶ 9) Hedinger informed Plaintiff that, pursuant to DOC policy, inmates in a maximum security setting may only receive medication from nursing staff and may not keep it on their person, whether the medication is over-the-counter or prescribed. (*Id.* at ¶ 10) According to Cain and Hedinger, an inmate's medications are noted in his medical records that are maintained by the medical contractor staff responsible for dispensing the medication directly to the inmate. (*Id.* at Ex. 2 at ¶ 11; Ex. 3 at ¶ 11) Hedinger states that after Plaintiff requested the return of his medication, he instructed Plaintiff to submit a sick call slip or file a medical grievance. (*Id.* at Ex. 3 at ¶ 12) Hedinger recalls that Plaintiff filed a medical grievance and the matter was resolved with Plaintiff obtaining the requested medication. (*Id.* at ¶ 12) Plaintiff submitted grievances on

3

December 25 and 30, 2011 regarding dental treatment and the administration of medication. (D.I. 118 Ex. E) Informal resolutions state that Plaintiff received, and took, antibiotics and that he received dental treatment and is no longer in pain. (*Id.*) Plaintiff did not appeal the decisions. (*Id.*) Neither Cain nor Hedinger are aware of any evidence that Plaintiff banged his head against his cell door the night of December 23, 2011 due to mouth pain or that his cellmate complained that Plaintiff kept him awake every night due to mouth pain. (D.I. 127 Ex. 2 at ¶ 13; Ex. 3 at ¶ 14)

### III. **MISCELLANEOUS MOTIONS**

Plaintiff filed a motion to produce key evidence and witnesses for trial and to order a trial. (D.I. 111) The motion is premature and will be denied.

Plaintiff seeks a transfer from VCC where he is currently incarcerated. (D.I. 123, 133) Plaintiff has filed motions for transfers to New Jersey institutions on a number of occasions and was advised that "further motions seeking a prison transfer will be docketed, but not considered." (D.I. 65) Plaintiff now requests transfer to any other prison "immediately."

Prison officials have discretion to house inmates at the facilities they choose. *See Walls v. Taylor*, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)). Moreover, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution, whether it be inside the state of conviction, or outside that state. *See Olim v. Wakinekona*, 461 U.S. 238, 251 (1983). Finally, "maintaining institutional security and preserving internal order and discipline" are the central goals of prison administration. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Based on these holdings, the Court has no authority to dictate where Plaintiff is housed. This determination is made by prison authorities as part of the administration of the prison. Therefore, the Court will deny the motions seeking a transfer.

4

## IV. SUMMARY JUDGMENT

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## B. Discussion

Plaintiff moves for summary judgment (D.I. 112)[4] on the grounds that: (1) Phelps retaliated against him for exercising his right to free speech; and (2) he was deprived of medication by Cain and Hedinger in violation of his constitutional rights.[5] Defendants move for summary judgment (D.I. 127) on the grounds that: (1) the record does not support the retaliation claim, as legitimate penological interests were served by Plaintiff's administrative transfer to a higher security level; (2) there is no credible evidence that Cain or Hedinger were deliberately indifferent to Plaintiff's serious medical needs at or about the time of his initial administrative transfer to a higher security level; and (3) Defendants are entitled to qualified immunity.

### 1. Retaliation

Plaintiff wrote two letters to Phelps that complained officers were "falsely violating the criteria for interstate compact."[6] Plaintiff argues that, as soon as he wrote the first letter, he was retaliated against by Phelps in the form of a transfer to MHU. Plaintiff seeks summary judgment on that issue. Defendants seek summary judgment on the grounds that Pierce, not Phelps, ordered the transfer and, moreover, the transfer was due to Plaintiff's serious behavioral problems.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). The First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*,

---

[4]Plaintiff's motion for summary judgment and opposition to Defendants' motion for summary judgment consist solely of argument. The Court, however, may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3).

[5]The parties discuss Plaintiff's other personal property claims in their respective motions for summary judgment. Plaintiff's personal property claims are not before the Court, having been dismissed on May 22, 2012. (*See* D.I. 16, 17)

[6]The Court was not provided with copies of the letters, but prison contact notes refer to the two letters. (*See* D.I. 45 Ex. A Contact Notes)

6

523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires a plaintiff to demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (stating factfinder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights"). The causation element requires a plaintiff to prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). When analyzing a retaliation claim, courts consider that the task of prison administrators and staff is difficult, and that the decisions of prison officials require deference, particularly where prison security is concerned. *See id.*

The United States Court of Appeals for The Third Circuit has incorporated the burden-shifting framework first set forth in *Mt. Healthy*, 429 U.S. at 287, into the prison context. *See Mincy v. Klem*, 277 F. App'x 239, 243 (3d Cir. May 6, 2008). In order to show a causal link, an inmate bears "the initial burden of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333 (quoting *Mt. Healthy*,

7

429 U.S. at 287). If the initial burden is met, the "burden then shift[s] to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." *Id.*

The unrebutted evidence of record is that Pierce, a non-defendant, is the individual responsible for transferring Plaintiff to MHU. Inasmuch as Phelps has no personal involvement in the transfer, summary judgment is appropriate for him. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.").

In addition, even assuming that Plaintiff could satisfy the first and second prongs of the test as elucidated in *Rauser*, his claims fail under the *Mt. Healthy* burden-shifting test. Defendants presented facts that Plaintiff was administratively transferred to MHU due to legitimate penological interests. It is undisputed that Plaintiff received numerous institutional infractions and that prison staff considered him a behavioral problem who could be better managed in a more restrictive housing unit. Defendants have established a legitimate penological purpose for the administrative transfer of Plaintiff.

Based upon the record, no reasonable jury could find that Plaintiff was a victim of retaliation. Accordingly, the Court will deny Plaintiff's motion for summary on the claims raised against Phelps and will grant Defendants' motion for summary judgment on the same issue.

### 2. Medical/Dental

Plaintiff seeks summary judgment on the grounds that Cain and Hedinger were deliberately indifferent to his serious dental needs when, upon his transfer to MHU, they did not allow him to keep prescribed pain medication and antibiotics in his cell. Cain and Hedinger seek summary

judgment on the basis that there is no evidence that they were deliberately indifferent to Plaintiff's serious medical needs.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *See id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05; *see also Monmouth Cnty. Corr. v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987) (deliberate indifference can be shown when medical treatment is delayed for non-medical reasons).

The record does not support a finding that Cain and Hedinger violated Plaintiff's constitutional rights. Even construing the facts in the light most favorable to Plaintiff, the alleged deprivations fail to satisfy the objective component necessary to state an Eighth Amendment claim. Federal courts have consistently held that isolated denials of necessities in prison for a short duration (up to nine days) do not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. *See, e.g., Schaeffer v. Schamp*, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008) (holding that plaintiff's "claims that he was placed in a hard cell for ten days without a mattress, soap, toilet paper, running water, legal supplies, his prescription medication and only received one meal a day" were insufficient to constitute Eighth Amendment violation). Given Plaintiff's allegations, it appears that he was without his prescribed medication for somewhere between two and five days. Moreover, Cain does not recall a request from Plaintiff for permission

9

to retain his medication in his cell. While Hedinger recalls that Plaintiff asked for medication, he does not recall Plaintiff indicating that the medication was necessary. Without evidence of Defendants' actual knowledge of his medical need, Plaintiff's claims fail. *See Farmer*, 511 U.S. at 846.

Nor does the record support a finding that Hedinger was deliberately indifferent to Plaintiff's medical needs. When Plaintiff requested his medication, Hedinger explained that Plaintiff was not allowed to keep medication on his person while housed in MHU due to DOC regulations. He did not ignore Plaintiff's request, but advised him to place a sick call slip or to file a medical grievance so that Plaintiff could receive the medication. The evidence of record demonstrates that Plaintiff did, in fact, submit grievances regarding the matter. Finally, the evidence of record indicates that neither Cain nor Hedinger had the authority to provide Plaintiff with the medication at issue. That duty lies with medical personnel. No reasonable jury could find that Cain and Hedinger violated Plaintiff's constitutional rights. Therefore, the Court will grant Defendants' motion for summary judgment on the medical needs issue.

## V. CONCLUSION

For the reasons stated above, the Court will deny Plaintiff's motions (D.I. 111, 112, 123, 133, 134) and will grant Defendant's motion (D.I. 126).[7]

An appropriate Order will be entered.

---

[7] The Court will not address the issue of qualified immunity given that summary judgment on behalf of Defendants will be granted on other grounds. In addition, because the Court will grant summary judgment in favor of Defendants, the court will deny Plaintiff's recently filed motion for leave to file an amended complaint. (D.I. 134)